**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RICHARD USHER,

        Plaintiff,

   v.

UNITED STATES COMMODITY
FUTURES TRADING COMMISSION,

        Defendant.

Civil Action
No. 1:21-cv-00736 (KBJ)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**PLAINTIFF RICHARD USHER'S MOTION TO COMPEL PRODUCTION OF**
**DOCUMENTS FROM THE COMMODITY FUTURES EXCHANGE COMMISSION**

**WHITE & CASE**
701 13th Street N.W.
Washington, DC 20005

June 1, 2021

*Counsel for Richard Usher*

## TABLE OF CONTENTS

FACTUAL AND PROCEDURAL BACKGROUND .................................................................. 4

LEGAL STANDARDS ............................................................................................................... 7

ARGUMENT .............................................................................................................................. 8

    I.    The OCC's Administrative Subpoena Is Valid And Enforceable Against The CFTC, Particularly Here In A U.S. Government Enforcement Action Against Mr. Usher .......................................................................................................................... 8

    II.    The CFTC Fails To Meet Its Rule 45 Burden To Resist Production .................... 10

        A.    Rule 45 Analysis Applies To Enforce The ALJ's Administrative Subpoena In The Government's Administrative Action To Bar Mr. Usher For Life From Banking .......................................................................................................... 11

        B.    The Requested Documents Are Relevant ..................................................... 13

        C.    The Requested Documents Are Not Privileged ............................................ 13

            1.    Wholesale Denial By The CFTC Based On Privilege Is Inappropriate ........ 13

            2.    The Privilege Is Qualified, And The OCC Has Put CFTC Documents At Issue In Its Enforcement Action Against Mr. Usher ................................... 15

    III.    In The Alternative, The Documents Sought Are Reasonably Relevant And The CFTC's Refusal To Produce Documents Is Arbitrary And Capricious ............... 15

    IV.    The CFTC Has Waived Its Sovereign Immunity ................................................. 17

    V.    The CFTC's Refusal To Produce Documents Violates Defendants' Due Process Rights ................................................................................................................... 18

CONCLUSION ........................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Sur. Co. v. Baldwin,*
    287 U.S. 156 (1932)................................................................................................19

*Brady v. Maryland,*
    373 U.S. 83 (1963).............................................................................................7, 19

*Buzzfeed, Inc. v. U.S. Dep't of Justice,*
    318 F. Supp. 3d 347 (D.D.C. 2018) .....................................................................13

*Confederated Tribes of the Grand Ronde Cmty. of Ore. v. Jewell,*
    830 F.3d 552 (D.C. Cir. 2016) ...............................................................................9

*Donaldson v. United States,*
    400 U.S. 517 (1971)..............................................................................................11

*Feld v. Fireman's Fund Ins. Co.,*
    991 F. Supp. 2d 242 (D.D.C. 2013) .....................................................................15

*FTC v. Anderson,*
    631 F.2d 741 (D.C. Cir. 1979) .............................................................................10

*FTC v. Texaco, Inc.,*
    555 F.2d 862 (D.C. Cir. 1977) .............................................................................16

*Goldberg v. Kelly,*
    397 U.S. 254 (1970)..............................................................................................19

*Health Alliance Hosps., Inc. v. Burwell,*
    130 F. Supp. 3d 277 (D.D.C. 2015) .......................................................................9

*Hous. Bus. Journal v. Office of the Comptroller of the Currency,*
    *U.S. Dep't of Treasury,*
    86 F.3d 1208 (D.C. Cir. 1996) ...............................................................................8

*In re McVane,*
    44 F.3d 1127 (2d Cir. 1995) .................................................................................12

*Mathews v. Eldridge,*
    424 U.S. 319 (1976)..............................................................................................18

*McLelland v. Andrus,*

606 F.2d 1278 (D.C. Cir. 1979) ............................................................................19

*Miami-Luken, Inc. v. U.S. Dep't of Justice,*
No. 16-mc-012, 2016 U.S. Dist. LEXIS 92141 (S.D. Ohio July 15, 2016).....................8, 10

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.,*
463 U.S. 29 (1983).......................................................................................17

*Nat'l Parks Conservation Ass'n v. Semonite,*
916 F.3d 1075 (D.C. Cir. 2019) ...........................................................................10

*SEC v. Sprecher,*
594 F.2d 317 (2d Cir. 1979) ..................................................................................8

*Singh v. S. Asian Soc'y of the George Wash. Univ.,*
No. 06-cv-574, 2007 U.S. Dist. LEXIS 37718 (D.D.C. May 24, 2007) .............................14

*Sperry & Hutchinson Co. v. FTC,*
256 F. Supp. 136, 142 (S.D.N.Y. 1966) ...................................................................19

*Tuite v. Henry,*
98 F.3d 1411 (D.C. Cir. 1996) ..............................................................................15

*United States v. Apodaca,*
251 F. Supp. 3d 1 (D.D.C. 2017) ..........................................................................10

*United States v. Clemens,*
793 F. Supp. 2d 236 (D.D.C. 2011) ........................................................................15

*United States v. Firestone Tire & Rubber Co.,*
455 F. Supp. 1072 (D.D.C. 1978) ............................................................................8

*United States v. McCoy,*
954 F.2d 1000 (5th Cir. 1992) ..............................................................................12

*United States v. Tenn. Walking Horse Breeders' & Exhibitors' Ass'n,*
727 F. App'x 119 (6th Cir. 2018) ...........................................................................11

*Watts v. SEC,*
482 F.3d 501 (D.C. Cir. 2007) ....................................................................2, 8, 17

*Yousuf v. Samantar,*
451 F.3d 248 (D.C. Cir. 2006) ................................................................2, 8, 15, 17

## STATUTES AND RULES

1 C.F.R. § 1.1...............................................................................................9

12 CFR § 19 ............................................................................................................ 2, 6, 9, 12

5 U.S.C. § 555 ..................................................................................................................... 16

5 U.S.C. § 556 ..................................................................................................................... 12

5 U.S.C. § 704 ..................................................................................................................... 17

5 U.S.C. § 706 ..................................................................................................................... 17

12 U.S.C. § 1818 ......................................................................................................... 2, 8, 12

Fed. R. Civ. P. 26(b) .......................................................................................................... 15

Rule 45 ....................................................................................................................... passim

Rule 81 ................................................................................................................................ 11

Richard Usher is a British citizen and London-based former FX trader for JPMorgan Chase ("JPMorgan"), who is a defendant in a U.S. Government civil proceeding brought by the Department of the Treasury's Office of the Comptroller of the Currency ("OCC"). The theory of the OCC's penalty case is that Mr. Usher's conduct caused JPMorgan financial harm when JPMorgan entered into a 2014 settlement with U.S. government agencies including the Commodity Futures Trading Commission ("CFTC"). The OCC brought its civil charges against Mr. Usher on the same day in January 2017 that the DOJ Antitrust Division indicted Mr. Usher for allegedly price-fixing in the FX markets. But in October 2018, Mr. Usher was acquitted of antitrust charges for the same conduct—after a three-week jury trial in New York City. Discovery in the OCC civil case is at an advanced stage.

The Office of Financial Institution Adjudication ("OFIA") Administrative Law Judge ("ALJ") presiding over the Usher OCC case, Judge Jennifer Whang, has authorized a subpoena against the CFTC that seeks documents relating to JPMorgan's 2014 settlement with the CFTC. The novel theory of the OCC case holds Mr. Usher liable for the Bank's CFTC civil settlement. OCC Enforcement Counsel did not oppose the request.

Nonetheless, the CFTC has repeatedly refused to supply any information concerning its settlement with JPMorgan in response to the ALJ's subpoena. After months of delay, on April 12, 2021, the CFTC issued its "final decision" refusing to comply with the Subpoena in toto, despite the fact that an ALJ of a sister agency of the U.S. Government duly reviewed and authorized the Subpoena. Against the OCC's novel theory that Usher should be accountable for the JPMorgan settlement, the CFTC information is critical to the defense of Mr. Usher.

This Court has authority to enforce compliance with the Subpoena under the Federal Deposit Insurance Act, the OCC's governing regulations, and Rule 45 of the Federal Rules of Civil

Procedure.  12 U.S.C. § 1818(n); 12 C.F.R. § 19.26(c); Fed. R. Civ. P. 45.  Plaintiff Richard Usher respectfully requests that this Court enter an order directing the CFTC to comply with the Subpoena lawfully issued by the ALJ in the enforcement action being prosecuted by the U.S. Government, through its OCC.  *See* Amended Complaint ("Am. Compl.") Ex. 1 ¶¶ 52, 52(c), ECF No. 5-1 ("OCC Amended Notice of Charges") (relying on the CFTC penalty against Mr. Usher as a basis for seeking a lifetime ban against Mr. Usher in banking and a very large fine); *Watts v. SEC*, 482 F.3d 501, 508 (D.C. Cir. 2007) ("[A] challenge to an agency's refusal to comply with a Rule 45 subpoena should proceed and be treated . . . as a Rule 45 motion to compel.").

The OCC's regulations authorize the ALJ to issue subpoenas against an "agency"—which certainly includes U.S. government agencies—and to require enforcement of such subpoenas in federal court.  And the D.C. Circuit's precedent makes clear that subpoenas issued by an ALJ must receive the same treatment as Rule 45 subpoenas.  *Watts*, 482 F.3d at 508; *Yousuf v. Samantar*, 451 F.3d 248, 257 (D.C. Cir. 2006).  Anything else makes discovery against the United States in an action that the government brings for serious penalties a dead letter—which is an impossibility in our Constitutional system.

The OCC's regulations on adjudicatory proceedings and the authorizing statute expressly require a "subpoenaing party" seeking enforcement of a document subpoena to "apply to an appropriate United States district court for an order requiring compliance" "[i]f a subpoenaed person fails to comply with any subpoena issued pursuant to this section."  12 C.F.R. § 19.26(c); *see* 12 U.S.C. § 1818(n) (empowering the ALJ to "issue . . . subpenas [sic]" and to "make rules and regulations with respect to any such proceedings" and authorizing "any party to proceedings under this section," such as the OCC proceedings, to "apply to the United States District Court for

the District of Columbia . . . for enforcement of any [subpoena] issued pursuant to this subsection"); 5 U.S.C. § 556(c)(2) (permitting agency hearing officers to issue subpoenas).

This Motion is to compel compliance with a garden-variety subpoena for documents. The documents required to be produced are discretely targeted to the specific settlement between the CFTC and JPMorgan. Any burden the Subpoena may place on the CFTC is minimal and inherent in the United States government's own novel theory using a CFTC corporate fine as the basis for a large civil *individual* fine and a lifetime prohibition, as here.

The OCC case does not claim that Mr. Usher's trading caused it any losses. But novelly the OCC claims a settlement that the bank negotiated out on its own with the CFTC is reason enough to punish Mr. Usher. OCC Amended Notice of Charges ¶ 52(c) (asserting that the "Bank agreed to pay $310 million" to the CFTC to settle charges "based largely on" Mr. Usher's conduct). And any privilege arguments the CFTC may have are not grounds for a wholesale refusal to produce even non-privileged documents.

The CFTC's wholesale refusal to comply with the ALJ's Subpoena violates Mr. Usher's procedural due process rights to defend himself. The right to present a defense is fundamental under the Due Process Clause; the right to subpoena records is a key feature of the right to put on a defense.

With expert reports being written and summary judgment due in the Usher OCC case in September 10, 2021, and trial scheduled for December 2021, the CFTC's foot dragging and obstruction will soon amount to a pocket veto of Mr. Usher's Due Process rights, without the assistance of this Court to assure the enforcement of the Subpoena.

The CFTC has placed itself above the law. It has declared itself beyond the reach of compulsory process, and indeed, above procedural due process as a whole, by repudiating a

Subpoena issued by its own Executive Branch. It is truly Kafkaesque for one agency within the U.S. Government (the CFTC) to disclaim responsibility for the facts, events, and communications underlying an effort by another agency (the OCC) to prosecute Mr. Usher and to deprive him of his livelihood and life savings—when the CFTC settlement is the very basis for individual liability.

## FACTUAL AND PROCEDURAL BACKGROUND

The OCC is pursuing a punitive administrative enforcement action against Mr. Usher, a former London foreign exchange trader for JPMorgan Chase Bank ("JPMorgan" or the "Bank"). Am. Compl. ¶ 2; OCC Amended Notice of Charges at 1. The enforcement action seeks severe sanctions including a lifetime ban from the banking industry against Mr. Usher and the seizure of $1.5 million from him. OCC Amended Notice of Charges at 1-2. The OCC charges that Mr. Usher should be held liable for the "financial loss" that JPMorgan suffered when it decided in 2014 to settle with the CFTC related to Mr. Usher's trading conduct. *Id.* ¶¶ 52, 52(c), 54(b); *see also* Am. Compl. ¶¶ 3, 47-48.

The U.S. Department of Justice previously charged Mr. Usher—on the same day in January 2017 when the OCC announced its charges against Mr. Usher—with a criminal antitrust violation of the Sherman Act for certain FX (foreign exchange) currency trades. A New York City jury—after a three-week trial on the merits in federal court—acquitted Mr. Usher of the charges in October 2018. Am. Compl. ¶¶ 3, 40. Nevertheless, the OCC decided to press on with its parallel administrative action against Mr. Usher—based on the same coordination conduct of which he was acquitted in 2018. *See, e.g.*, OCC Amended Notice of Charges ¶ 35.

The OCC's enforcement action against Mr. Usher is novel in that it attempts to use the U.S. Government's settlement with a corporation against one of its employees essentially on a theory of strict liability to bar him from the banking industry and to impose a large fine. Specifically, the

OCC alleges "that Mr. Usher engaged in wrongful conduct that caused his employer's distant parent company, JPMorgan, to enter into monetary settlements with several U.S. and non-U.S. regulators," including a $310 million settlement with the CFTC. Am. Compl. ¶ 11 (citing OCC Amended Notice of Charges ¶ 52(c)). Those settlements, the OCC's new theory goes, amounted to the statutory "financial loss," thereby allowing the OCC to fine him $1.5 million and bar him permanently from the banking industry. *Id*. ¶ 47 (citing 12 U.S.C. § 1818(e)(1)(B)(i)); OCC Amended Notice of Charges ¶¶ 49-52. But the JPMorgan settlements at issue "resolved allegations that *JPMorgan* violated specific laws and/or regulations," and "resolved a myriad of legal exposures unrelated" to Mr. Usher's work for the bank. Am. Compl. ¶¶ 51-52 (emphasis added).

To mount his defense in the OCC proceedings against the CFTC settlement, Mr. Usher on February 4, 2021 applied for a subpoena from Administrative Law Judge Jennifer Whang to obtain relevant documents from the CFTC's settlement with JPMorgan. *See* Am. Compl. Ex. 2, ECF No. 5-2. Naturally, ALJ Whang was empowered by Congressional statute and the OCC's own regulations to propound subpoenas for documents that respondents need in order to mount their defenses. *See* 5 U.S.C. § 556(c)(2) (permitting agency hearing officers to issue subpoenas); 12 U.S.C. § 1818(n) (authorizing bank regulators to issue subpoenas in administrative proceedings); 12 C.F.R. § 19.5(b)(2) (granting subpoena power to administrative law judges in OCC enforcement actions); 12 C.F.R. § 19.26 (permitting parties in OCC enforcement proceedings to seek subpoenas from the administrative law judge).

Mr. Usher is entitled to ascertain the basis for the Bank's decision to settle and the CFTC's own novel assertion of a settlement over spot FX in the inter-dealer spot FX market—a market that the CFTC does not regulate. The documents will show the grounds for the Bank's decision

to settle.  Am. Compl.  Ex. 2 at 2.  OCC discovery has already borne this out with respect to the other predicate agencies with which JPMorgan also had settled.

The OCC Enforcement Attorneys bringing the case on behalf of the United States against Mr. Usher consented to Mr. Usher's subpoena request.  Am. Compl.  Ex. 3 at 1, ECF No. 5-3.  On February 8, 2021, Administrative Law Judge Jennifer Whang granted Mr. Usher's subpoena request, thus obliging the CFTC to produce documents related to the CFTC's settlement with JPMorgan.  Am. Compl.  Ex. 4 at 1, ECF No. 5-4 ("Subpoena").  The ALJ-approved Subpoena on the CFTC was served on the CFTC on February 18, 2021.

The ALJ Subpoena required the CFTC to produce to Mr. Usher's counsel the relevant documents "within 14 days of the date of service" of the Subpoena.  *Id.*

The CFTC has not produced any documents.  Nor has the CFTC moved the ALJ to quash or modify the Subpoena.  12 C.F.R. § 19.26(b).

Instead, on February 17, 2021, the CFTC's Legal Division informed Mr. Usher by letter that it does not consider itself subject to the OCC's jurisdiction, so it "will not produce records in response to [the] demand."  Am. Compl.  Ex. 5 at 1, ECF No. 5-5.  Typical of the CFTC's cavalier attitude toward the OCC ALJ and Mr. Usher's rights of defense, the CFTC requested that Mr. Usher "withdraw the subpoena" and suggested Mr. Usher instead file a Freedom of Information Act ("FOIA") request with the CFTC (*id.* at 2).[1]

---

[1] To preserve his rights, Mr. Usher also filed a FOIA request on March 18, 2021.  Am. Compl. Ex. 12, ECF No. 5-12.  But Mr. Usher was immediately informed that the CFTC would not be producing any documents for FOIA requests during the COVID-19 pandemic.  The CFTC's suggestion to file a FOIA request was known to the CFTC staff to be diversionary and futile.  A FOIA request is inadequate for many reasons compared to a subpoena.  The FOIA statute is "riddled with exemptions and exclusions, which agencies can and do use frequently."  Am. Compl. ¶ 61 (citing 5 U.S.C. § 552(b), (c)).  These exemptions in FOIA are "far broader than common law privileges in discovery," and are "practically absolute and unreviewable, unlike common law privileges, which are qualified."  *Id.*  "Congress has made categorical choices for federal agencies for what should be disclosed to the public in FOIA.  Subpoenas are evaluated and

On March 4, 2021, the CFTC's Legal Division reiterated its decision not to comply with the Subpoena in a subsequent letter to Mr. Usher. Am. Compl. Ex. 7 at 1, ECF No. 5-7. In that letter, the Legal Division announced its intention to ignore the Subpoena's deadline to produce because holding a vote of the "*busy* five-member body" of the Commission within that time frame was "infeasible," and the CFTC did not view the matter as "ripe" until the complete Commission "[gave] it due consideration" and rendered a decision. *Id.* (emphasis added).

Over a month later, on April 12, 2021, the full five-member Commission itself issued an order announcing its final decision to "decline[] to authorize compliance with the Subpoena because the Subpoena is invalid and unduly burdensome." Ex. 1 ("CFTC Order") at 1. Disregarding Mr. Usher's rights of defense in an action prosecuted against him by the U.S. Government, the CFTC chose to prioritize "the Commission's interest in *conserving agency resources*." *Id.* (emphasis added). This reasoning is particularly suspect as the U.S. Government's charges against Mr. Usher arise from CFTC settlement entered into with JPMorgan on the same day as the OCC settlement. *See* Ex. 2 ("CFTC-JPMorgan Settlement"); Ex. 3 ("OCC-JPMorgan Consent Order") (both issued on November 11, 2014).

Mr. Usher has the right to access exculpatory evidence the government possesses, and the CFTC's obstruction of Mr. Usher's request for that evidence is an affront to the Constitution, to justice, and to fairness. *Brady v. Maryland*, 373 U.S. 83 (1963).

## LEGAL STANDARDS

A motion to compel is the proper mechanism for enforcing the subpoena. "A proceeding to enforce a subpoena . . . is summary in nature, and except in the most extraordinary

---

weighed by the judiciary." *Id.* "Forcing a defendant in a government suit to defend himself via FOIA is a contradiction in terms, apart from a constitutional violation." *Id.* As of filing this Motion, the CFTC has not provided a date by which it can process Mr. Usher's FOIA request.

circumstances, discovery and testimony are not allowed." *United States v. Firestone Tire & Rubber Co.*, 455 F. Supp. 1072, 1078 (D.D.C. 1978); *see also SEC v. Sprecher*, 594 F.2d 317, 319-20 (2d Cir. 1979) (affirming district court's order enforcing SEC subpoena in summary proceedings as authorized by statute). *See also Miami-Luken, Inc. v. U.S. Dep't of Justice*, No. 16-mc-012, 2016 U.S. Dist. LEXIS 92141, at *21, *28 (S.D. Ohio July 15, 2016) (ordering Drug Enforcement Administration to comply with administrative subpoena issued by ALJ upon plaintiff's request). And this Court is the proper forum to resolve this dispute.

Indeed, the D.C. Circuit in *Watts v. SEC*, 482 F.3d 501 (D.C. Cir. 2007), expressly held that "government agencies are 'persons' subject to Rule 45 subpoenas," so the district court is the proper venue for any challenge to an agency's refusal to comply with a subpoena. 482 F.3d at 508 (citing *Yousuf v. Samantar*, 451 F.3d 248, 257 (D.C. Cir. 2006)). *See also Hous. Bus. Journal v. Office of the Comptroller of the Currency, U.S. Dep't of Treasury*, 86 F.3d 1208, 1213 (D.C. Cir. 1996) ("The procedures for obtaining a subpoena in federal court are set forth in Rule 45.").

## ARGUMENT

**I.   The OCC's Administrative Subpoena Is Valid And Enforceable Against The CFTC, Particularly Here In A U.S. Government Enforcement Action Against Mr. Usher**

Administrative Law Judge Whang acted within her authority when she issued the Subpoena, which is enforceable against the CFTC. The plain text of the relevant OCC authorizing statute and regulation permits the ALJ to issue a subpoena against a non-party federal agency. Section 1818(n) of Title 12 permits the ALJ to "issue . . . subpenas [sic] duces tecum" subject to the agency's "rules and regulations with respect to any such proceedings." 12 U.S.C. § 1818(n). And the definitional provision that applies to the Code of Federal Regulations defines "agency" as "each authority, whether or not within or subject to review by another agency, of the United States,

other than the Congress, the courts," and the territories and possessions of the United States, "unless the context requires otherwise."  1 C.F.R. § 1.1.

Here, the context does not require otherwise.  The definitional provision applying to the OCC's regulation on ALJ subpoena power, 12 C.F.R. § 19.26, simply defines "person" to include "agency," (12 C.F.R. § 19.3(m)), as do related OCC regulations.  *See* 12 C.F.R. § 313.3 ("(a) Agency means a department, agency, court, court administrative office, or instrumentality in the executive, judicial, or legislative branch of Government, including Government corporations."); Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS, at 170-72 (1st Ed. 2012) ("A word or phrase is presumed to bear the same meaning throughout a text . . . . The presumption of consistent usage applies also when different sections of an act or code are at issue.").

The CFTC's tortured reading of the OCC's "Federal Register release" to manufacture with a "plausible" interpretation of the meaning of the term "agency" (CFTC Order at 6-8) is unnecessary where, as here, the regulation's definitional provision is clear. *See Confederated Tribes of the Grand Ronde Cmty. of Ore. v. Jewell*, 830 F.3d 552, 559 (D.C. Cir. 2016) ("[W]e give substantial deference to an agency's interpretation of its own regulations unless it is contrary to the regulation's plain language." (citing *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994))); *Health Alliance Hosps., Inc. v. Burwell*, 130 F. Supp. 3d 277, 290-92 (D.D.C. 2015) (holding CMS Administrator's action arbitrary and capricious where it relied on an interpretation inconsistent with the regulation's plain meaning); Scalia & Garner, at 69 ("Words are to be understood in their ordinary, everyday meanings—unless the context indicates that they bear a technical sense.").

And it is the OCC's interpretation, not the CFTC's interpretation, of the term that carries weight. *See also Nat'l Parks Conservation Ass'n v. Semonite*, 916 F.3d 1075, 1088 (D.C. Cir. 2019) (holding that the Court "owe[s] no deference to [an agency's] interpretation of a statute it does not administer" and instead "begin[ning] [the] analysis with the language of the statute"); *id.* at 1088-89 (considering the administering agencies' application of the term at issue even though neither agency "ha[d] provided binding guidance" on it).

Here, ALJ Whang interpreted the OCC's own regulation to permit enforcement of the Subpoena against the CFTC. The CFTC's contrary interpretation concerning a regulation it does not administer should carry no weight.

Moreover, courts not surprisingly have held administrative subpoenas enforceable against non-party federal agencies in proceedings brought by the U.S. Government, like this one. *See United States v. Apodaca*, 251 F. Supp. 3d 1, 12 (D.D.C. 2017) (enforcing administrative third-party subpoena seeking recordings and documents from the US Department of Corrections). And courts enforce discovery administrative subpoenas against federal agencies, applied for by respondents in agency proceedings, using the same standard of review. *See Miami-Luken*, 2016 U.S. Dist. LEXIS 92141, at *28 (ordering Drug Enforcement Administration to comply with administrative subpoena issued by ALJ upon plaintiff's request); *see also FTC v. Anderson*, 631 F.2d 741, 745-46 (D.C. Cir. 1979) (applying the same standard of relevancy to administrative subpoenas "whether adjudicative or investigative").

## II.     The CFTC Fails To Meet Its Rule 45 Burden To Resist Production

The ALJ Subpoena seeks an extremely specific set of documents related to the reasons JPMorgan settled with the CFTC—the precise information on which the U.S. Government's case against Mr. Usher relies. Initial discovery in the OCC enforcement action has shown that JPMorgan settled with the other agencies for reasons unrelated to Mr. Usher, clearly suggesting

that the discovery the CFTC must produce on its settlement issued on the same day will likely show the same result. The time frame and subject matter of the documents the ALJ has compelled the CFTC to produce are strictly limited to these settlements, placing very little burden on the CFTC to produce them. To the extent some of these documents deal with privileged issues, the CFTC can follow the proper procedure followed by every other Rule 45 subpoena recipient—not by wholesale refusing to respond but by making specific arguments for withholding certain documents.

### A. Rule 45 Analysis Applies To Enforce The ALJ's Administrative Subpoena In The Government's Administrative Action To Bar Mr. Usher For Life From Banking

This Court should apply Rule 45 of the Federal Rules of Civil Procedure to enforce the ALJ Subpoena. Rule 81(a)(5) permits courts to apply the Federal Rules "to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute, except as otherwise provided by statute." Fed. R. Civ. P. 81(a)(5). *See United States v. Tenn. Walking Horse Breeders' & Exhibitors' Ass'n*, 727 F. App'x 119, 125 (6th Cir. 2018) ("Courts have read . . . Rule 81 to allow courts to apply the federal rules whenever possible— i.e., where statutory provisions are otherwise silent on procedural matters."); *id.* at 124 ("Rule 81 makes clear that district courts have discretion to apply the federal rules generally to proceedings to enforce administrative subpoenas."); *cf. Donaldson v. United States*, 400 U.S. 517, 528 (1971) (holding that Rule 81 "expressly . . . provides" that the Federal Rules "have an application" to an IRS summons enforcement proceeding (referring to a previous version of the Rule)).

Enforcing the ALJ's Subpoena against the CFTC in an enforcement action brought by the U.S. Government is appropriate here. *First*, the OCC's authorizing statute and regulations permit application of Rule 45. *See* 5 U.S.C. § 556(c)(2) (deeming agency subpoena authority "subject to published rules of the agency and within its powers"); 12 C.F.R. §§ 19.1-19.41 (Uniform Rules of

11

Practice and Procedure governing the OCC proceeding against Mr. Usher (*see* § 19.1(e))). *Cf. In re McVane*, 44 F.3d 1127, 1134 (2d Cir. 1995) (reviewing statutory grants of authority, including § 1818(n), to the FDIC to issue subpoenas and holding that the statutes place "few restrictions" on that power, such that "[a]ny limitation beyond [the statutory language] on the agency's subpoena power must be found, if at all, in the Constitution").

*Second*, the egregious circumstances in which the CFTC has denied Mr. Usher access to exculpatory evidence necessitates this court's exercise of discretion "to tailor the Federal Rules to the particular needs and purposes of the proceeding." *United States v. McCoy*, 954 F.2d 1000, 1004 (5th Cir. 1992). The CFTC is "ignoring duly authorized process," sanctioned by a sister government agency within the Executive Branch that coordinated with the CFTC and settled with JPMorgan the same day that the CFTC did, in an enforcement proceeding relating to charges for which Mr. Usher was already acquitted. Am. Compl. ¶¶ 3-4. The documents the CFTC refuses to produce contain the selfsame "facts undergirding" the OCC's enforcement action (*id.* ¶ 21) that are known to exist and are plainly "relevant and important" to Mr. Usher's defense (*id.* ¶ 75)—in violation of his due process rights. Accordingly, Rule 45 must apply.

When considering a motion to compel under Rule 45, this Court "first consider[s] whether the discovery sought is relevant to a party's claim or defense in the underlying litigation." *Buzzfeed, Inc. v. U.S. Dep't of Justice*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018). Then, the Court "assess[es] any objections to the subpoena under the standards supplied by Rule 45, which 'requires that district courts quash subpoenas that call for privileged matter or would cause an undue burden.'" *Id.* (quoting *Watts*, 482 F.3d at 508). There is no doubt about the relevance of the documents given that the CFTC settlement is the express basis for the OCC's enforcement action.

12

### B.  The Requested Documents Are Relevant

The Subpoena seeks documents directly relevant to the OCC's claim that Mr. Usher caused JPMorgan to settle with the CFTC and should be vicariously punished for that. Am. Compl. ¶¶ 3-4.  In an attempt to meet one of its statutory elements (12 U.S.C. § 1818(e)(1)(B)(i)), the OCC alleges that Mr. Usher caused a "financial loss" to JPMorgan when the Bank paid out various litigation settlements and incurred related legal costs.  *See* OCC Amended Notice of Charges ¶ 54(b); Am. Compl. ¶ 47. Accordingly, to challenge this allegation, the Subpoena sought by Mr. Usher requests documents concerning (a) whether conduct at JPMorgan violated the Commodity Exchange Act; (b) the legal and factual basis of the JPMorgan-CFTC settlement document and penalty amount; (c) presentations by JPMorgan concerning the Bank's asserted liability; and (d) witness interviews relating to the CFTC's investigation.  Am. Compl. Ex. 4 at 7.

These documents and communications are plainly relevant to Mr. Usher's defense against the OCC's allegation that he caused the CFTC settlement.  These issues have been put squarely in dispute by the OCC as they constitute the factual basis for the only allegations remaining against Mr. Usher.  The documents sought will allow Mr. Usher to show that JPMorgan's various settlements were not in fact tied to Mr. Usher's conduct as a matter of legal causation, but rather to the Bank's other exposures unrelated to Mr. Usher.  Am. Compl. ¶¶ 13-14.  The CFTC acknowledges as much, rephrasing in the passive voice that one of the questions in the OCC's enforcement action is "whether [JPMorgan's] losses are attributable" to Mr. Usher's conduct. CFTC Order at 13.  The documents requested are patently responsive to this issue.

### C.  The Requested Documents Are Not Privileged

#### 1.  Wholesale Denial By The CFTC Based On Privilege Is Inappropriate

The CFTC's blanket refusal to comply with the Subpoena based on privilege is inappropriate and overbroad.  CFTC Order at 11.  Certainly, at least a subset of the documents and

communications requested by the Subpoena do not fall within the ambit of the various privileges the CFTC mentions. And in any event, Mr. Usher would be entitled to a privilege log to challenge any privilege that the CFTC might seek to assert.

For example, none of the documents requested fall within the law enforcement privilege because none would "impair the ability of the CFTC to conduct future investigations" by "reveal[ing] general investigatory processes and techniques" because the documents are likely keyed specifically to the circumstances of the particular settlement. *Id.* at 12. And even if the privilege were to apply, the documents' relevance to future investigations is outweighed by Mr. Usher's particular need for their production, discussed above. *See also Singh v. S. Asian Soc'y of the George Wash. Univ.*, No. 06-cv-574, 2007 U.S. Dist. LEXIS 37718, at *9-10 (D.D.C. May 24, 2007) (holding that courts must "weigh the public interest in nondisclosure against the [requesting party's] need for access to the privileged information").

The ALJ has entered a protective order to govern the OCC proceeding, which will prevent disclosure of any general strategy to potential subjects of CFTC oversight. Am. Compl. ¶ 45.

Additionally, Mr. Usher cannot seek documents responsive to these requests from JPMorgan, as the CFTC asserts, because apparently JPMorgan did not provide any white papers to the CFTC related to the instant settlement. CFTC Order at 13. But Usher is entitled to test this assertion. And to the extent that any of the responsive documents are subject to the work-product privilege, many such documents—such as those regarding the Bank's conduct—would constitute "fact" work product "entitled to a lower standard of protection." *United States v. Clemens*, 793 F. Supp. 2d 236, 254 (D.D.C. 2011).

### 2.   The Privilege Is Qualified, And The OCC Has Put CFTC Documents At Issue In Its Enforcement Action Against Mr. Usher

Regardless, the deliberative process and law enforcement privileges are qualified, and must be overcome here, as the documents are patently relevant and Mr. Usher has shown substantial need for the documents, which are in the CFTC's sole possession (as discussed above).  Fed. R. Civ. P. 26(b); *see Tuite v. Henry*, 98 F.3d 1411, 1419 (D.C. Cir. 1996) (quoting *In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988)).  And the United States has waived the work product privilege here because the OCC—the CFTC's sister agency with whom it coordinated its settlement with JP Morgan—has "placed prior attorney work product squarely 'at issue' in the case." *Feld v. Fireman's Fund Ins. Co.*, 991 F. Supp. 2d 242, 252 (D.D.C. 2013).  The fact that it is the OCC, and not the CFTC itself, who has placed the CFTC document at issue, should be of no moment.  Another agency *within the Executive Branch* put the documents at issue in an action brought by the U.S. Government by using the JPMorgan-CFTC settlement as the basis for its allegations.  Consequently, the United States should not be permitted to use the distinctions between agencies as both a sword (i.e., a basis for liability in a sister agency's proceedings) and a shield (a reason to withhold relevant and essential documents).  Simply put, the United States cannot, on the one hand, claim that the reasoning behind the JPMorgan-CFTC settlement leads to liability, but then shield discovery on that reasoning on the grounds of privilege.

### III.   In The Alternative, The Documents Sought Are Reasonably Relevant And The CFTC's Refusal To Produce Documents Is Arbitrary And Capricious Under The APA

The D.C. Circuit is clear that Rule 45, "by the use of the term 'person' . . . bring[s] the Government within the scope of the Rule," requiring application of the Federal Rules of Procedure—not the Administrative Procedures Act—to subpoenas against the government, including its agencies. *Yousuf v. Samantar*, 451 F.3d 248, 257 (D.C. Cir. 2006).

"A government agency's decision to assert privilege or otherwise not to comply with a subpoena in an ongoing civil litigation, or to decline to authorize employees to answer subpoenas directed to them, is *simply an ordinary litigation decision*, not an agency's 'final disposition' of the kind referenced in the APA." *Watts*, 482 F.3d at 506 (emphasis added).

But even if the Court were instead to review the CFTC's decision pursuant to the APA, the Court must compel the CFTC's compliance.

The APA authorizes federal courts to review, on a "strictly limited" basis, the enforceability of contested administrative subpoenas." 5 U.S.C. § 555(d); *FTC v. Texaco, Inc.*, 555 F.2d 862, 871-72 (D.C. Cir. 1977) (citing *Endicott Johnson v. Perkins*, 317 U.S. 501 (1943)). "A subpoenaing party has 'a right to judicial enforcement of the [agency] subpoena'" "so long as the investigation [is] for a lawfully authorized purpose, the documents sought [are] relevant to the inquiry, and the demand [is] reasonable." *Id.* (finding the district court improperly limited an administrative subpoena duces tecum when it exceeded "the narrow ambit . . . of a court asked to enforce an agency's investigative subpoena"). Here, it is the defendant seeking to enforce the subpoena against another government agency.

Mr. Usher's requests for the CFTC's documents related to its settlement with JPMorgan are plainly and directly relevant to the charges underlying the OCC's enforcement proceeding. *See* Am. Compl. ¶¶ 47-52, 74; *supra* at 12-13. Mr. Usher's document requests are reasonably limited in time and scope to materials directly relevant to the settlement in question. *See* Am. Compl. Ex. 4 at 7. Accordingly, this Court must order the CFTC's compliance with the Subpoena.

Even if the APA's arbitrary and capricious standard applies, the CFTC's refusal to produce the documents requested by the Subpoena fails to pass muster. 5 U.S.C. § 706(2)(A). An order refusing to comply with an administrative subpoena is arbitrary and capricious where the refusal

is unsupported by the record, lacks a particularized explanation, or lacks a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

The CFTC's refusal to produce documents requested by the Subpoena is arbitrary and capricious because it fails to articulate specific reasons for the denial and instead rebuffs the Subpoena in its entirety, ignores that the relevant documents are likely readily accessible, and disregards that the discovery requested is essential to Mr. Usher's defense in the OCC proceeding.

To the extent this Court requires agency action to be final for the matter to be ripe for review, the CFTC's order of April 12, 2021 constitutes such final action. 5 U.S.C. § 704. The Amended Complaint need not be amended for this Court to consider the CFTC Order or to consider it final. *See* Fed. R. Civ. P. 1 (requiring the Federal Rules to "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"). The D.C. Circuit has held that "[a]n agency's denial of a [document] request is a final agency action for the purpose of § 704." *Yousuf*, 451 F.3d at 251; *see also Watts*, 482 F.3d at 508 (holding that "the SEC's decision to object to the subpoena . . . was final agency action").

## IV.    The CFTC Has Waived Its Sovereign Immunity

Contrary to the CFTC's contention, federal agencies cannot claim sovereign immunity to avoid compliance with third-party subpoenas. "[T]he government has waived its sovereign immunity for actions seeking relief other than money damages," including Rule 45 subpoenas, through Section 702 of the APA. Am. Compl. ¶ 79 (citing *Linder v. Calero-Portocarrero*, 251 F.3d 178, 180 (D.C. Cir. 2001)). An administrative subpoena issued in an Article I court is far more analogous to a Rule 45 subpoena than to a subpoena issued by a state court. *See Hous. Bus.*

*Journal*, 86 F.3d at 1213 (distinguishing state-court subpoenas because the underlying actions are not "asserted to be within federal-court jurisdiction"). And as the OCC's authorizing statute and regulations evidence, administrative subpoenas may be enforced by Article III courts. *See* 12 U.S.C. § 1818(n); 12 C.F.R. § 19.26(c). Further, it does not follow that a federal agency can "claim immunity with regard to subpoenas consented to and issued by fellow officers . . . of the same United States Executive Branch" pursuant to their authorizing statutes, but cannot claim immunity from subpoenas issued by private parties in Article III courts. Am. Compl. ¶ 79.

The U.S. government is pursuing this action against Mr. Usher. The government cannot seek to punish with civil monetary penalties and a lifetime ban and at the same time refuse discovery. This is particularly true where, as here, the Government's theory is that the "financial loss" element is being satisfied by a settlement with another party—in effect a strict liability theory for employees.

## V. The CFTC's Refusal To Produce Documents Violates Defendants' Due Process Rights

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth . . . Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Respondents in administrative actions have the right to due process in those proceedings (*Goldberg v. Kelly*, 397 U.S. 254, 262 (1970)), which necessarily encompasses the right to discovery. *See Am. Sur. Co. v. Baldwin*, 287 U.S. 156, 168 (1932) ("Due process requires that there be an opportunity to present every available defense[.]"); *Sperry & Hutchinson Co. v. FTC*, 256 F. Supp. 136, 142 (S.D.N.Y. 1966) ("[D]ue process at the administrative level require[s] . . . disclosures by the agency" "which may be helpful to the accused."). By seeking to impose a penalty of $1.5 million and ban Mr. Usher for life from the banking industry, the OCC's prosecution jeopardizes Mr. Usher's life

savings and future livelihood.   Am. Compl. ¶ 3.  With these interests at stake, Mr. Usher is entitled to procedural due process in the OCC proceeding.

The U.S. Constitution certainly compels the government to provide Mr. Usher with the right to be heard.  An essential part of presenting any defense, particularly in a proceeding with such severe consequences, is the right to subpoena records—particularly exculpatory records—from the Government.  *See Brady*, 373 U.S. 83.

Discovery has been authorized by the ALJ and is indeed required here, particularly in a U.S. Government prosecution.  "[D]iscovery must be granted if in the particular situation a refusal would so prejudice a party as to deny him due process."  *McLelland v. Andrus*, 606 F.2d 1278, 1286 (D.C. Cir. 1979).

Only an order from this court compelling CFTC compliance will give Mr. Usher the means to mount a defense to the OCC's allegation that Mr. Usher caused a financial loss to JPMorgan.[2] Am. Compl. ¶ 47.

---

[2] As discussed above at 6-7 n.1, Mr. Usher's FOIA request does not provide a meaningful alternative to Mr. Usher's constitutional right to procedural due process.  Beyond the case law enshrining discovery within the procedural due process right, it is unlikely that the CFTC can or will provide Mr. Usher with the relevant documents via FOIA before the end of discovery, which is already "well under way."  Indeed, discovery "is scheduled to conclude [entirely] on August 12, 2021," and "[t]he evidentiary hearing on the merits starts on December 6, 2021."  *Id.* ¶ 46.  Since "FOIA responses often take more than a year," this approach is hopelessly inadequate and inconsistent with the Constitutional requirements.  *Id.* ¶ 63.  Moreover, one of CFTC's objections to compliance with the subpoena is that "it will impose a heavy burden on Commission resources for the review of Commission files for responsive records, redaction of all privileged or protected information, and production of such redacted responsive records."  CFTC Order at 12.  But this reasoning must also apply to responses to FOIA requests, particularly from an agency that carried a backlog of FOIA requests as recently as September 2020.  Am. Compl. ¶ 6.

## CONCLUSION

Based on the foregoing, Mr. Usher respectfully requests this Court to order the CFTC to comply with the Subpoena issued by the OFIA administrative law judge.

Dated:  June 1, 2021
        Washington, DC

Respectfully submitted,

# WHITE & CASE

 /s/ *J. Mark Gidley*
J. Mark Gidley (Bar No. 417280)
White & Case LLP
701 13th Street N.W.
Washington, DC 20005
(202) 626-3609
mgidley@whitecase.com

*Counsel for Richard Usher*